UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LAURA SORRELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01917-SEB-MPB |
| | ) | |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |

# **ORDER**

Plaintiff Laura Sorrels ("Sorrels") appeals the final decision of the Deputy Commissioner for Operations ("Deputy Commissioner") of the Social Security Administration ("SSA") denying her April 30, 2014, applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] R. (Dkt. 13) at 14. The applications were initially denied on August 19, 2014, R. at 116, and upon reconsideration on October 15, 2014. R. at 128. The administrative law judge ("ALJ") conducted a hearing on March 17, 2016, R. at 29, resulting in a decision on June 27, 2016, that Sorrels was not disabled and thus not entitled to receive DIB or SSI. R. at 11.

---

[1] On March 6, 2018, the President was notified that, effective November 17, 2017, Nancy A. Berryhill could no longer serve as the Acting Commissioner of the Social Security Administration pursuant to the Federal Vacancies Reform Act of 1998. Government Accountability Office, https://www.gao.gov/products/D18772#mt=e-report (last visited Apr. 27, 2018). The case caption has been updated to reflect the Deputy Commissioner's current title.

[2] In general, the same legal standards apply no matter whether the claimant seeks DIB or SSI benefits. However, these standards are set forth in separate statutory and regulatory sections. Parallel citations are supplied where necessary.

1

The Appeals Council denied review on April 5, 2017, and the Deputy Commissioner's decision became final. R. at 1. On June 9, 2017, Sorrels timely filed this action seeking judicial review of that decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Dkt. 1.

For the reasons below, the decision is reversed and the case remanded for action consistent with this order.

### **Background**[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA, *see* 20 C.F.R. § 404.1520(a)(4)(i) to (v), in concluding that Sorrels is not disabled. Specifically, the ALJ found as follows:

- Preliminarily with respect to Sorrels's DIB claim, Sorrels last met the insured status requirements on June 30, 2005. R. at 16.
- At Step One, Sorrels had not engaged in substantial gainful activity[4] since February 15, 2004, the alleged disability onset date. *Id.*
- At Step Two, Sorrels suffered from the following severe impairments: osteoarthritis of the bilateral knees, fibromyalgia, bipolar disorder, and anxiety. *Id.*
- At Step Three, Sorrels did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. at 17.
- At Step Four, Sorrels had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she is able to lift and carry twenty pounds occasionally and ten pounds frequently. [Sorrels] can stand and/or walk six hours of an

---

[3] The discussion of Sorrels's medical history and treatment includes sensitive and otherwise confidential medical information. To the extent possible, we detail here specific facts only as necessary to address the parties' arguments.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

2

eight-hour workday and sit for six hours of an eight-hour workday. [Sorrels] must alternate positions for 1-2 minutes every 30 minutes. [Sorrels] can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. [Sorrels] can occasionally balance, stoop, kneel, crouch and crawl. [Sorrels] must avoid moderate use of moving machinery and exposure to unprotected heights. [Sorrels] is able to understand, remember, and follow simple to mildly complex instructions. [Sorrels] is restricted to work that involves brief, superficial interactions with fellow workers and the public. [Sorrels] is able to sustain attention and concentration skills to carry out work-like tasks with reasonable pace and persistence. The work must not require driving. The work must allow a flexible pace free of fast-paced production. [Sorrels] must be allowed to be off-task 2-5 minutes every hour. The work must accommodate one absence per month." R. at 19.

- At Step Five, relying on the testimony of the vocational expert ("VE") and in light of Sorrels's age (41), education (high-school equivalency and medical assistant degrees), past work experience (none relevant), and RFC, there were jobs that existed in significant numbers in the national economy which Sorrels could have performed through the date of the decision. R. at 23–24.

## **Standard of Review**

Upon review of the Deputy Commissioner's decision,

> [w]e will uphold [it] if it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007)). A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Our review is limited to the reasons articulated by the ALJ in her decision. *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). In determining whether the decision was properly supported, we neither reweigh the evidence nor assess the

3

credibility of witness, nor substitute our judgment for the Deputy Commissioner's. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## Analysis

Sorrels presents a single issue for review: whether the ALJ properly assessed the weight to be given to the medical opinion of one of Sorrels's treating psychiatrists, Dr. Zeba Madni ("Madni"). We agree the ALJ did not and her decision was therefore unsupported by substantial evidence.

"An ALJ must give 'controlling weight' to a treating source's opinion if it is 'well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence.'" *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)).[5] "An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1527(c)(2)).

If the ALJ does articulate good reasons for failing to give controlling weight to a treating physician's opinion, it is "still . . . necessary to determine what weight [her]

---

[5] We note that the SSA's regime for evaluating medical evidence has been substantially revised, including elimination of the treating source rule and rescission of certain Social Security Rulings cited here, for claims filed after March 27, 2017. *See generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1520c). As Sorrels's claim was filed before March 27, 2017, however, we continue to apply Section 404.1527 and cases relying on it.

We note further that, effective March 26, 2012, Section 404.1527(d) has been redesignated Section 404.1527(c). How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012). Where the cases refer to the original designation, we have supplied the redesignation.

4

opinion [is] due under the applicable regulations." *Id.* at 751 (citing 20 C.F.R. § 404.1527(c)(2)). The SSA has interpreted this regulatory directive to mean that, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). In any event, if the treating physician's opinion is not given controlling weight, "[a]n ALJ must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson*, 615 F.3d at 751 (citing *inter alia Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c)(2)(i) to (ii), (c)(3) to (6).

Here, the record discloses that Madni has been treating Sorrels since 2013, with access to treatment records stretching back to 2004. On October 2, 2015, Madni completed a form medical source statement which opined, as relevant here, that Sorrels suffered marked impairment of

- "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods";
- "[t]he ability to interact appropriately with the general public";
- "[t]he ability to accept instructions and respond appropriately to criticism from supervisors";
- "[t]he ability to travel in unfamiliar places or use public transportation"; and
- "[t]he ability to set realistic goals or make plans independently of others[.]"

5

R. at 1032–33. Madni opined further that, "on the average," Sorrels was "likely to be absent from work as a result of [her] impairments or treatment . . . [m]ore than four days per month." R. at 1034.

In her controlling-weight analysis, the ALJ made no finding as to whether Madni's opinion was supported by medically acceptable clinical and diagnostic techniques and stated no grounds for concluding that it was not. The ALJ did find that Madni's opinion was inconsistent with other substantial evidence in three respects: first, Madni's assessment of Sorrels's "social limitations" was inconsistent with "objective evidence of record, which documents no clinical manifestations of social dysfunction"; second, Madni's assessment of the same was inconsistent with Sorrels's "reports of shopping weekly and attending other errands and appointments"; third, Madni's "opinion regarding the claimant's inability to use public transportation [was] inconsistent with [Sorrels's] subjective reports of using public transportation for errands and appointments." R. at 22. These findings of inconsistency were not supported by substantial evidence.

First, we cannot perceive any basis in the record for the ALJ's conclusion that the "objective evidence . . . documents no clinical manifestations of social dysfunction . . . ." *Id.*; *also* R. at 18 ("[N]o treating clinician has noted clinical signs of social dysfunction."). To the contrary, Madni and Sorrels's previous treating doctors noted several such manifestations. *See* R. at 807 ("violent behavior when manic"; "irritable, argumentative"), 827 ("difficulty maintaining work pace"; "[p]resents restless with leg shaking, nervous manner, depressed mood, congruent affect"), 866 ("anxious"; "panic attack last week"), 871 ("anxious in crowds"; "occasional panic attack"), 874 ("anxious";

6

"panic attack"), 883 (same), 895 ("Affect anxious"), 932 ("severe anxiety"), 935 ("presenting anxious and irritable"), 943 ("feels overwhelmed by . . . anxiety"; "difficulty with controlling anger"), 957 ("Affect—anxious"), 971 ("has lately been isolating herself"; "Affect—anxious"). While the ALJ was free to weigh this evidence in her consideration of Madni's opinion, she was not free to assert its nonexistence. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

Second, the ALJ perceived a conflict between Madni's assessment of Sorrels's social limitations and Sorrels's self-reports that the ALJ did not justify. In the context of Sorrels's here-relevant impairment, bipolar disorder, there is no necessary inconsistency between the "marked" social impairments Madni found, on the one hand, and Sorrels's reports of weekly shopping and attending doctor's appointments, on the other. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her over all condition."), 712 ("[An] ability to struggle through the activities of daily living does not mean that [one] can manage the requirements of a modern workplace."); *Bauer v. Astrue*, 532 F.3d 606, 607–08 (7th Cir. 2008) ("A person suffering from bipolar disorder has violent mood swings, the extremes of which are mania—a state of excitement in which [she] loses contact with reality and exhibits bizarre behavior—and clinical depression, in which [she] has great difficulty sleeping or concentrating. . . . [T]he judge noted that the plaintiff dresses appropriately [and] shops for food [among other small responsibilities]. This is just to say that the plaintiff is not a raving lunatic who needs to be locked up.").

While such a conflict or inconsistency may in fact have existed, the ALJ did not support her finding that it did with substantial or, indeed, any evidence. The ALJ appears simply to have assumed that a person who is capable of weekly grocery shopping trips, or, worse, who is capable of seeking out necessary medical treatment, does not suffer "marked" social impairments. That cannot be true and is not true here.

Third and finally, the ALJ perceived a conflict between Madni's finding of a "marked" impairment of Sorrels's "ability to travel in unfamiliar places or use public transportation," R. at 1033, on the one hand, and Sorrels's "reports of using public transportation for errands and appointments[,]" on the other. R. at 22. Again, no conflict necessarily exists and the ALJ's decision did not support its finding of a conflict with substantial evidence.

Madni did not opine that Sorrels was incapable of using public transportation; she opined that Sorrels suffered a "marked" impairment of her "ability to travel in unfamiliar place *or* use public transportation." R. at 1033 (emphasis added). Even setting aside the ambiguity created by the use of the disjunctive on the form statement, as noted above, in the context of mental illness the bare *capacity* to perform a task does not exclude the possibility that a patient's illness markedly *impairs* her ability to do so. Indeed, as revealed on the self-reporting form cited by the ALJ herself, Sorrels reported that while she is *capable* of using public transportation, she does not "like to leave [her] house," does not "like to be around other people [because she] get[s] panic attacks," cannot drive because she "get[s] panic attacks," finds it difficult to "go out alone," and completes her weekly shopping trips "as fast as [her] body will let [her] because [she] just want[s] to get

8

home[.]" R. at 215. Such "cherry-picking" of evidence in support of the ALJ's ultimate conclusion does not survive substantial-evidence review. *Punzio*, 630 F.3d at 710.

Even if, moreover, the ALJ's decision not to give Madni's opinion controlling weight had been supported by substantial evidence, her decision to give it "minimal" weight was entirely unsupported by the mandatory application of the relevant regulatory factors. *See Larson*, 615 F.3d at 751 ("Apart from the ALJ's unhelpful statement that Dr. Rhoades's opinion was entitled to 'some weight,' the ALJ said nothing regarding this *required* checklist of factors." (emphasis added)).

Had the ALJ given Madni's opinion controlling or even greater than "minimal" weight, the result for Sorrels may well have been different. Specifically, Madni opined that Sorrels's impairments or treatment would require her to miss more than four days of work per month. The VE testified that local and national employers' "[t]olerance for absence ranges between one and three days a month. However, if an individual continues to miss two or more days a month they would not be able to maintain competitive employment." R. at 63. As noted above, the ALJ determined that Sorrels's RFC required her to miss no more than one day of work per month. R. at 19. Moreover, Madni opined that Sorrels's "ability to accept instructions and respond appropriately to criticism from supervisors" was "markedly" impaired. R. at 1033. Such a finding, if accepted by the ALJ, would have weighed heavily in Sorrels's favor. *See* SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).

Accordingly, this case must be remanded for reconsideration of the issues relating to the appropriate weight to be given to Dr. Madni's opinion(s).

## **Conclusion and Order**

For the reasons explained above:

The ALJ's decision is REVERSED.

The case is REMANDED for proceedings consistent with this order under sentence four of 42 U.S.C. § 405(g). Final judgment shall issue by separate document. Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date: 6/7/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michael G. Myers
mgmyers10@sbcglobal.net

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov